**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JORDON E. HARRIMAN, SB# 117150
  E-Mail: Jordon.Harriman@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff THE HANOVER
INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>     vs.<br><br>WESTERN AMERICAN PROPERTIES, LLC, and JAMES PERLEY,<br><br>          Defendants. | CASE NO.  2:19-cv-5164<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, The Hanover Insurance Company ("Hanover"), for its Complaint for Declaratory Judgment against Defendants, Western American Properties, LLC ("WAP") and James Perley, states as follows:

## Jurisdiction and Venue

1.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2.     Plaintiff Hanover is a New Hampshire corporation with its principal place of business in Worcester, Massachusetts.

3.     Defendant WAP is a limited liability company formed under the laws of the State of California with its principal place of business in Manhattan Beach,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-0090-7928.1

California.  The members of WAP are each citizens of the State of California.

4.     Defendant James Perley is a citizen of the state of California and is a member of WAP.

5.     The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a), as the action is between citizens of different states, and the amount in controversy exceeds $75,000.

6.     Venue is proper in the Central District of California, as a substantial portion of the events giving rise to this insurance coverage dispute occurred in this District.

### The Underlying Lawsuit

7.     AMTAX Holdings 2001-U, LLC ("AMTAX") has filed two lawsuits, which have been consolidated under Case No. BC638420 in the Superior Court of the State of California, County of Los Angeles (the "Underlying Lawsuit").

8.     One of the lawsuits is against Preservation La Brea, LLC (the "La Brea Administrative General Partner") and other defendants (the "La Brea Action").

9.     The other lawsuit is against Preservation Properties, LLC (the "Greenfair Administrative Partner") and other defendants (the "Greenfair Action").

**A.     The La Brea Action**

10.     On or about September 28, 2018, AMTAX filed a Third Amended Complaint in the La Brea Action, which added as defendants, *inter alia*, WAP and Perley, and added Preservation La Brea, L.P., a limited partnership (the "Partnership"), as a nominal defendant.  A true and correct copy of the La Brea Third Amended Complaint is attached hereto and incorporated herein as **Exhibit A**.

11.     The La Brea Third Amended Complaint is summarized by the following allegations:

> A. The La Brea Action involves a Partnership formed in October 2000 to develop a low-income housing project and to capitalize on federal low-income housing tax credits.  As the 15-year tax credit



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

compliance period drew to a close in January 2016, AMTAX anticipated that it would soon reap the benefits of its investment. As authorized under the Partnership Agreement, AMTAX directed the Administrative General Partner to either sell the Property on the open market, or arrange for AMTAX's interest in the Property to be purchased by the General Partners or a third party.

B. The General Partners and their members, however, had other plans. They, along with Perley, WAP, Landecker, Squier, and Perel devised a scheme to force AMTAX out of the Partnership for little consideration so they could continue to collect the cash flow from the Property in the short-term, and seize capital proceeds from a future sale or resyndication of the Property for themselves in the long-term.

C. The General Partners, Perley, WAP, Landecker, Squier, and Perel intentionally manufactured the impending crisis by falsely asserting that a loan on the Property was maturing at the end of 2016 and that the loans on the Property needed to be refinanced immediately to avoid default. In fact, default could have been avoided by simply obtaining a new letter of credit to secure the loan. General Partners, Perley, WAP, Landecker, Squier and Perel never sought to replace the letter of credit, instead pushing AMTAX repeatedly for its consent to refinance the underlying unmatured indebtedness, even after AMTAX explained that a refinance was not in the best interests of AMTAX or the Partnership.

D. With the risk of default looming, the General Partners, Perley, WAP, Landecker, Squier, and Perel attempted to corner AMTAX into selling its interest in the Partnership for less than 6% of its fair market value. When AMTAX refused, the General Partners, Perley,

3

WAP, Landecker, Squier, and Perel scrambled to save the Property from potential foreclosure.  Conscious that the Partnership Agreement did not permit them to refinance without AMTAX's consent, Administrative General Partner, Perley, WAP, Landecker, and Perel executed a pair of contracts, specifically, a "Forbearance Agreement" and an "Escrow Agreement," that together amount to a disguised refinance of the loans then encumbering the Property.

E.  The General Partners not only violated the Partnership Agreement by refinancing the loans and modifying the loan agreements without AMTAX's consent, they also breached their contractual obligation to sell the Property or arrange a buyout of AMTAX's interest at a fair market value keyed or indexed to the underlying value of the Property when directed to do so by AMTAX.  Perley, WAP, Landecker, Squier, and Perel knowingly participated in and encouraged these unlawful actions to advance their own self-interest to the detriment of the Partnership and AMTAX.

12.    The La Brea Third Amended Complaint includes 13 causes of action, four of which are expressly directed at WAP and Perley.

13.    The Tenth Cause of Action in the La Brea Third Amended Complaint alleges Intentional Interference with Contract against WAP, Perley, and others.  The Tenth Cause of Action alleges that WAP, Perley and others intentionally acted to circumvent the Partnership Agreement and to obtain refinancing and other loan modifications without AMTAX's consent.  It further alleges that WAP, Perley and others breached and disrupted the Partnership Agreement when the Partnership entered into a "Forbearance Agreement" and "Escrow Agreement" which materially modified the Loans and amounted to a refinance without AMTAX's prior consent.

14.    The Eleventh Cause of Action in the La Brea Third Amended Complaint alleges Aiding and Abetting Intentional Interference with Contract, based

on the same or similar underlying factual allegations set forth in the Tenth Cause of Action.

15.     The Twelfth Cause of Action in the La Brea Third Amended Complaint alleges Conspiracy to Interfere with Contract against WAP, Perley, and others, based on the same or similar underlying factual allegations set forth in the Tenth Cause of Action.

16.     The Thirteenth Cause of Action in the La Brea Third Amended Complaint alleges Aiding and Abetting Breach of Fiduciary Duty against WAP, Perley, and others, alleging that WAP, Perley and others had knowledge of the fiduciary duties owed by the Administrative General Partner and Managing General Party to AMTAX, and were aware that the "Forbearance Agreement," "Escrow Agreement," and related side-deals constituted a breach of those duties.  The Thirteenth Cause of Action further alleges that WAP, Perley and others gave Administrative Partner and Managing General Partner substantial assistance to breach their fiduciary duties to AMTAX by obtaining refinancing and other loan modifications without AMTAX's consent and unreasonably refusing to dissolve and liquidate in an effort to deprive AMAX of the benefit of its bargain.

17.     The La Brea Third Amended Complaint also contains causes of action against Administrative General Partner, of which WAP and Perley are members. Those causes of action include: (a) two causes of action for Breach of Written Contract; (b) Breach of Implied Covenant of Good Faith and Fair Dealing; (c) two causes of action for Breach of Fiduciary Duty; (d) Declaratory Relief regarding alleged breaches of contractual, statutory and fiduciary duties; (e) Judicial Dissolution of the Partnership; (f) Foreclosure of Security Interest; and (g) Injunctive Relief.

18.     The Prayer for Relief in the La Brea Third Amended Complaint seeks judgment in the form of damages, specific performance, injunctive relief, a declaratory judgment, dissolution of the Partnership Agreement and liquidation of

1   the Partnership assets, order of foreclosure with respect to AMTAX's collateral,

2   punitive damages, prejudgment interest, attorneys' fees, and costs of suit.

3   **B.**      **The Greenfair Action**

4         19.      On or about September 28, 2018, AMTAX filed a Third Amended

5   Complaint in the Greenfair Action, which added as defendants, *inter alia*, WAP and

6   Perley, and added Preservation Greenfair, L.P., a limited partnership (the

7   "Partnership"), as a nominal defendant.  A true and correct copy of the Greenfair

8   Third Amended Complaint is attached hereto and incorporated herein as **Exhibit B**.

9         20.      The Greenfair Third Amended Complaint is summarized by the

10  following allegations:

11              A. The Greenfair Action involves a Partnership formed in October

12                  2000 to develop a low-income housing project and to capitalize on

13                  federal low-income housing tax credits.  As the 15-year tax credit

14                  compliance period drew to a close in January 2016, AMTAX

15                  anticipated that it would soon reap the benefits of its investment.  As

16                  authorized under the Partnership Agreement, AMTAX directed the

17                  Administrative General Partner to either sell the Property on the

18                  open market, or arrange for AMTAX's interest in the Property to be

19                  purchased by the General Partners or a third party.

20              B. The General Partners and their members, however, had other plans.

21                  They, along with Perley, WAP, Landecker, Squier, Perel, and

22                  Tucciarone devised a scheme to force AMTAX out of the

23                  Partnership for little consideration so they could continue to collect

24                  the cash flow from the Property in the short-term, and seize capital

25                  proceeds from a future sale or resyndication of the Property for

26                  themselves in the long-term.

27              C. The General Partners, Perley, WAP, Landecker, Squier, Perel, and

28                  Tucciarone intentionally manufactured the impending crisis by

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

6

falsely asserting that a loan on the Property was maturing at the end of 2016 and that the loans on the Property needed to be refinanced immediately to avoid default.  In fact, default could have been avoided by simply obtaining a new letter of credit to secure the loan. General Partners, Perley, WAP, Landecker, Squier, Perel, and Tucciarone never sought to replace the letter of credit, instead pushing AMTAX repeatedly for its consent to refinance the underlying unmatured indebtedness, even after AMTAX explained that a refinance was not in the best interests of AMTAX or the Partnership.

D. With the risk of default looming, the General Partners, Perley, WAP, Landecker, Squier, Perel, and Tucciarone attempted to corner AMTAX into selling its interest in the Partnership for less than 6% of its fair market value.  When AMTAX refused, the General Partners, Perley, WAP, Landecker, Squier, Perel, and Tucciarone scrambled to save the Property from potential foreclosure. Conscious that the Partnership Agreement did not permit them to refinance without AMTAX's consent, Administrative General Partner, Perley, WAP, Landecker, Perel, and Tucciarone executed a pair of contracts, specifically, a "Forbearance Agreement" and an "Escrow Agreement," that together amount to a disguised refinance of the loans then encumbering the Property.

E. The General Partners not only violated the Partnership Agreement by refinancing the loans and modifying the loan agreements without AMTAX's consent, they also breached their contractual obligation to sell the Property or arrange a buyout of AMTAX's interest at a fair market value keyed or indexed to the underlying value of the Property when directed to do so by AMTAX.  Perley, WAP,

Landecker, Squier, Perel and Tucciarone knowingly participated in and encouraged these unlawful actions to advance their own self-interest to the detriment of the Partnership and AMTAX.

21.     The Greenfair Third Amended Complaint includes 13 causes of action, four of which are expressly directed at WAP and Perley.

22.     The Tenth Cause of Action in the Greenfair Third Amended Complaint alleges Intentional Interference with Contract against WAP, Perley, and others.  The Tenth Cause of Action alleges that WAP, Perley and others intentionally acted to circumvent the Partnership Agreement and to obtain refinancing and other loan modifications without AMTAX's consent.  It further alleges that WAP, Perley and others breached and disrupted the Partnership Agreement when the Partnership entered into a "Forbearance Agreement" and "Escrow Agreement" which materially modified the Loans and amounted to a refinance without AMTAX's prior consent.

23.     The Eleventh Cause of Action in the Greenfair Third Amended Complaint alleges Aiding and Abetting Intentional Interference with Contract, based on the same or similar underlying factual allegations set forth in the Tenth Cause of Action.

24.     The Twelfth Cause of Action in the Greenfair Third Amended Complaint alleges Conspiracy to Interfere with Contract against WAP, Perley, and others, based on the same or similar underlying factual allegations set forth in the Tenth Cause of Action.

25.     The Thirteenth Cause of Action in the Greenfair Third Amended Complaint alleges Aiding and Abetting Breach of Fiduciary Duty against WAP, Perley, and others, alleging that WAP, Perley and others had knowledge of the fiduciary duties owed by the Administrative General Partner and Managing General Party to AMTAX, and were aware that the "Forbearance Agreement," "Escrow Agreement," and related side-deals constituted a breach of those duties.  The Thirteenth Cause of Action further alleges that WAP, Perley and others gave

Administrative Partner and Managing General Partner substantial assistance to breach their fiduciary duties to AMTAX by obtaining refinancing and other loan modifications without AMTAX's consent and unreasonably refusing to dissolve and liquidate in an effort to deprive AMAX of the benefit of its bargain.

26.     The Greenfair Third Amended Complaint also contains causes of action against Administrative General Partner, of which WAP and Perley are members. Those causes of action include: (a) two causes of action for Breach of Written Contract; (b) Breach of Implied Covenant of Good Faith and Fair Dealing; (c) two causes of action for Breach of Fiduciary Duty; (d) Declaratory Relief regarding alleged breaches of contractual, statutory and fiduciary duties; (e) Judicial Dissolution of the Partnership; (f) Foreclosure of Security Interest; and (g) Injunctive Relief.

27.     The Prayer for Relief in the Greenfair Third Amended Complaint seeks judgment in the form of damages, specific performance, injunctive relief, a declaratory judgment, dissolution of the Partnership Agreement and liquidation of the Partnership assets, order of foreclosure with respect to AMTAX's collateral, punitive damages, prejudgment interest, attorneys' fees, and costs of suit.

### **Hanover Policy**

28.     Hanover issued Policy No. LH3 9924063 06 to WAP, effective August 1, 2018 to August 1, 2019 (the "Hanover Policy").  A true and correct certified copy of the AIX Policy is attached hereto and incorporated herein as **Exhibit C**.

29.     The Hanover Policy has a Limit of Liability of $2,000,000 for each **Claim**, not to exceed $2,000,000 for all **Claims** in the aggregate, subject to a deductible of $5,000 Each **Claim**.

30.     Item 6. of the Declarations in the Hanover Policy describes "Professional Services" as "Property Management."

31.     The Hanover Policy contains the following insuring agreement for Professional Services Coverage:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**1.** Professional Services Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.

The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3** and **A.4** below:

**a.** The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;

**b.** **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim**, prior to the effective date of this **policy**; and,

**c.** The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arising from any **wrongful act** to which this **policy** applies.

32. The Hanover Policy contains the following provision regarding defense and settlement:

**B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)**

**We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

Payment of **claim expenses** will reduce the amounts available to pay **damages**. **Our** duty to defend any **claim** or pay any amount as **damages** or **claim expenses** will cease when **our** limit of liability has been exhausted. Upon exhaustion of the limits of liability, **we** will tender control of the defense to the **named insured**. The **named insured** agrees to accept this tender of defense.

33. The Hanover Policy contains the following definitions:

**Insured** means:
    1. The **named insured**; and

***

5.  If **you** are a corporation, any past or present officer, director, trustee, or employee of **yours**, but only while acting on **your** behalf in such capacity….

**Professional services** means those services described in Item **6.** of the Declarations which **you** perform for others for a fee.

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission or misstatement committed in **your professional services**.

**Hanover Providing a Defense Pursuant to a Reservation of Rights**

34.    Hanover is providing a defense under a full reservation of rights to WAP and Perley in both the La Brea Action and  in the Greenfair Action or the Underlying Lawsuit.

**COUNT I**

**(Declaratory Judgment – No Duty to Defend or Indemnify Perley – Perley is not an Insured)**

35.    The allegations contained in paragraphs 1 through 34 are re-alleged as though fully set forth herein.

36.    The definition of "insured" in the Hanover Policy includes officers, directors, trustees or employees of WAP, but only while acting on behalf of WAP in such capacity.

37.    Perley was and is an officer of WAP, but both the La Brea Third Amended Complaint and Greenfair Third Amended Complaint in the Underlying Lawsuit allege acts and/or omissions acting solely within his capacity as a managing member of Administrative General Partner.

38.    The La Brea Third Amended Complaint and the Greenfair Third Amended Complaint in the Underlying Lawsuit do not allege acts and/or omissions by Perley while acting in his capacity of an officer of WAP.

39.    Perley is not an "insured" with respect to the Underlying Lawsuit.

40.     Hanover has no duty to defend or indemnify Perley in the Underlying Lawsuit.

## COUNT II
### (Declaratory Judgment – No Duty to Defend or Indemnify WAP or Perley – "Professional Services" not Alleged)

41.     The allegations contained in paragraphs 1 through 40 are re-alleged as though fully set forth herein.

42.     The Hanover Policy applies only to "claims" arising from a "wrongful act" in the rendering or failure to render "professional services" by a person or entity insured under the Hanover Policy.

43.     The Hanover Policy defines "professional services" as those services described in Item 6. of the Declarations in the Hanover Policy which the insured performs for others for a fee, *i.e.*, "Property Management."

44.     The causes of action against WAP and Perley in the Underlying Lawsuit are based on their positions as members of the Administrative General Partner and not on allegations that WAP and/or Perley rendered or failed to render Property Management services.

45.     The causes of action in the Underlying Lawsuit do not arise from a "wrongful act" in the rendering or failure to render "professional services" by WAP and/or Perley.

46.     Hanover has no duty to defend or indemnify WAP or Perley in theUnderlying Lawsuit.

## COUNT III
### (Declaratory Judgment – No Duty to Defend or Indemnify WAP or Perley – "Wrongful Act" not Alleged)

47.     The allegations contained in paragraphs 1 through 46 are re-alleged as though fully set forth herein.

48.     The Hanover Policy applies only to "claims" arising from a "wrongful act."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

49.     The Hanover Policy defines "wrongful act" as "any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**."

50.     None of the acts, errors, omissions and/or misstatements alleged in the Underlying Lawsuit  against WAP and Perley is negligent.

51.     None of the acts, errors, omissions and/or misstatements alleged in the Underlying Lawsuit  against WAP and Perley was committed in WAP's and/or Perley's "professional services."

52.     The Underlying Lawsuit  does not arise from a "wrongful act," as that term is defined in the Hanover Policy.

53.     Hanover has no duty to defend or indemnify WAP or Perley in the Underlying Lawsuit.

## COUNT IV
### (Declaratory Judgment – No Duty to Defend or Indemnify WAP or Perley – Prior Knowledge)

54.     The allegations contained in paragraphs 1 through 53 are re-alleged as though fully set forth herein.

55.     The insuring agreement in the Hanover Policy provides coverage only if the insureds "had no knowledge of facts which could have reasonably caused [them] to foresee a claim, or any knowledge of the claim, prior to the effective date of this policy."

56.     AMTAX first filed the Underlying Action against Administrative General Partner in or about October 2016, which was nearly two years prior to the inception of the Hanover Policy.

57.     Upon information and belief, as members of Administrative General Partner, WAP and Perley had knowledge, at the time of the filing of the Underlying Lawsuit and/or prior to October 1, 2018, of allegations on which the causes of action in the La Brea Third Amended Complaint and Greenfair Third Party Amended Complaint against WAP would later be based.

58.     The condition precedent in the insuring agreement, described in Paragraph 44, above, has not been satisfied.

59.     Hanover has no duty to defend or indemnify WAP or Perley in the Underlying Lawsuit.

## COUNT IV
### (Reimbursement of Defense Costs from WAP and Perley)

60.     Hanover refers to and incorporates by reference the allegations in paragraphs 1 through 59 of this complaint as though fully set forth herein.

61.     Pursuant to the case of *Buss v. Superior Court*, 16 Cal.4th 35 (1997), Hanover is entitled to reimbursement of defense fees and costs it has expended and/or will expend in defense of matters which were never covered under the Hanover Policy.  Hanover has specifically reserved its rights to seek reimbursement of those costs.

62.     Hanover requests a judgment declaring that it is entitled to reimbursement from WAP and/or Perley of some and/or all of the defense fees and costs expended by Hanover in defense of WAP and/or Perley in the Underlying Lawsuit.

WHEREFORE, Hanover Insurance Company respectfully requests that this Court enter judgment in its favor and against the defendants herein, finding and declaring that:

1. Hanover has no duty to defend or indemnify Perley in the Underlying Lawsuit because Perley is not an insured with respect to the causes of action asserted in the Underlying Lawsuit; and

2. Hanover has no duty to defend or indemnify WAP or Perley in the Underlying Lawsuit because the Underlying Lawsuit does not allege that WAP or Perley rendered or failed to render "professional services," as defined in the Hanover Policy;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

3.  Hanover has no duty to defend or indemnify WAP or Perley in the Underlying Lawsuit because the Underlying Lawsuit does not allege that WAP or Perley committed a "wrongful act," as defined in the Hanover Policy; and

4.  Hanover has no duty to defend or indemnify WAP or Perley in the Underlying Lawsuit because they had knowledge of facts which could have reasonably caused them to foresee a claim, or had knowledge of the claim, prior to the policy period of the Hanover Policy, thereby failing to meet a condition precedent to coverage under the Hanover Policy.

5.  Hanover is entitled to reimbursement of all attorneys' fees and costs expended by Hanover for the defense of WAP and Perley in the Underlying Lawsuit.

DATED: June 13, 2019                    LEWIS BRISBOIS BISGAARD & SMITH LLP


                                        By:    /s/ Jordon E. Harriman
                                            Jordon E. Harriman
                                            Attorneys for Plaintiff THE HANOVER
                                            INSURANCE COMPANY

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW